# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 2:07CR00014 |
| v. | ) **OPINION** |
| GARY ROBINSON, | ) By: James P. Jones |
| | ) United States District Judge |
| Defendant. | ) |

*Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, for United States; Gary Robinson, Pro Se Defendant.*

The defendant, Gary Robinson, proceeding pro se, filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 (West Supp. 2012), challenging his confinement for federal criminal offenses related to an assault of a fellow prison inmate. After review of the record and all submissions, I find that Robinson is not entitled to relief under § 2255.

I

A grand jury of this court returned a four-count Indictment on August 21, 2007, against Gary Robinson and John T. Millner, inmates at the United States Penitentiary-Lee County ("USP Lee"), charging the defendants, as both principals and aiders and abettors, with assault with intent to commit murder of another

inmate, in violation of 18 U.S.C.A. §§ 2 and 113(a)(1) (West 2000) (Count One); assault with a dangerous weapon, in violation of 18 U.S.C.A. §§ and 113(a)(3) (West 2000) (Count Two); assault resulting in serious bodily injury, in violation of 18 U.S.C.A. §§ 2 and 113(a)(6) (West 2000) (Count Three); and possession of a prohibited object designed and intended to be used as a weapon, in violation of 18 U.S.C.A. §§ 1791(a)(2) and 1791(d)(1)(B) (West 2000) (Count Four).

The court appointed counsel for Robinson, granted the defense request for discovery, allowing counsel to "inspect and copy relevant information, including but not limited to the materials described in Fed. R. Crim. P. 16(a)(1)," and allowed Robinson to review redacted discovery materials at the jail. Robinson's codefendant, Millner, pleaded guilty to all charges without the benefit of a plea agreement on December 12, 2007. Robinson elected to proceed to a jury trial, which was held on December 18, 2007.

The evidence, taken in the light most favorable to the government, established that on August 19, 2006, Millner and Robinson attacked inmate Larry Beale as he was working in the food service area at USP Lee. Millner stabbed Beale numerous times in the upper body and face with a nine-inch long, sharpened metal weapon similar to an ice pick. (Trial Tr. vol. II, 61, 66, Dec. 18, 2007.) Beale tried to protect himself with a large metal mixing paddle, measuring over a foot long and weighing more than eleven pounds. (*Id.* 13, 17, 98.) Robinson took

the paddle from Beale and struck him with it several times.  (*Id.* 35-36, 51, 57-58, 99.)

Robinson and Millner ignored commands from prison employees and officers to stop the assault.  (*Id.* 15, 30, 45, 76.)  The assistant food services administrator, Officer Salinas, saw Robinson striking Beale on the top of the head with the mixing paddle and ordered him twice to stop.  (*Id.* 51.)  Robinson looked directly at the officer, twice said, "No," and then cocked the mixing paddle as if to strike at the officer.  (*Id.* 51-52.)  The assault ended only after enough officers had arrived at the scene to safely and forcibly subdue the two attackers.  (*Id.* 16, 41-42, 45.)  Even as one officer (Lt. Martin) physically forced Millner off Beale, he saw Robinson swinging the mixing paddle over his head, but another officer pinned Robinson against a table in time to prevent him from striking another blow.  (*Id.* 69, 72, 76-77.)

When Millner and Robinson started the attack, Beale was cleaning the officer's mess, an area monitored by security cameras.  (*Id.* 28.)  Beale tried to escape his assailants by running out of the mess through other areas of the kitchen and hallway of the segregation area, not always in view of the cameras, with Millner and Robinson in pursuit.  (*Id.* 30, 41.)  The prosecution played for the jury two segments of video footage taken by the security cameras, showing parts of the attack (*id.* 5-6) and then replayed sections of the footage as the witnesses explained

what they had seen in relation to the movements portrayed in the video footage. (*Id.* 13-16 (Halsey); 31-36 (Johnson); 48 (Long); 53-57 (Salinas); 67-69 (Martin); and 78-80 (Pratt).)

The victim, Beale, testified that Robinson and Millner (whom Beale identified only as the inmate who attacked him with a sharpened weapon) first entered the kitchen area to confront Beale about an incident the previous day, for which Beale apologized. (*Id.* 90.) The pair returned a half hour later, but ran out when Salinas came through the door. (*Id.* 91.) After Salinas left, Robinson and Millner returned to speak with Carr, the cook, about some matter, then left again. (*Id.* 93-94.) About 3:30 p.m., Robinson and Millner came back a fourth time and spoke briefly to Carr, before starting their attack on Beale. (*Id.* 96.)

Beale testified that Millner struck him first with the weapon, leaving a wide gash near his eye, and Robinson, whom Beale called "G," started punching Beale. (*Id.* 96-98.) Beale called to Carr, who ran out of the kitchen, while Beale picked up a chair and the mixing paddle to defend himself, pushed a table, threw the chair, and ran from the room. (*Id.* 98-101.) Beale then slipped in a puddle of water, slid into an oven, and hit his head, which he believed knocked him unconscious momentarily. (*Id.* 99.) As Beale yelled to a nearby officer for help, Robinson took the paddle from him and struck at his head, hitting Beale's hands as he tried to protect his head and face from the blows. (*Id.* 99-100.) Beale recalled Robinson

-4-

striking him numerous times with the paddle, even after Officer Salinas returned and ordered Robinson to "put it down." (*Id*. 100.)

Beale suffered twenty-seven stab wounds to his face, neck and shoulders, a laceration to the back of his head requiring three sutures, a laceration below his left eye requiring seven sutures, blunt force trauma to the top of his head, and scratches and lacerations on his hands. (*Id.* 116-26.) The physician's assistant who treated Beale's injuries testified that a "crescent-shaped depression" on the "top side" of Beale's head was caused by a blow with a "[v]ery hard object" with "a curved type of dimension," like the mixing paddle. (*Id.* 125.)

John Millner testified on Robinson's behalf. Millner testified that he knew Robinson only as a coworker in the food service area of the prison, where they had worked together for two or three months. (*Id.* 134-35.) Millner admitted that he had gotten into an "altercation" with Beale, but denied that Robinson was involved or that they had planned the attack in advance.[1] (*Id.*) Millner said, "I did it, I just woke up and decided I was going to do it. . . . I stabbed that dude." (*Id.* 136.)

When shown the camera footage of the attack on Beale, Millner denied knowing the identity of the second attacker. Millner testified that if Robinson had

---

[1] On cross-examination, counsel for the government sought testimony about how long Millner had known Robinson. When counsel asked Millner about an incident report written against him for assaulting another inmate with a homemade weapon on December 5, 2003, Millner confirmed receiving the report and admitted that Robinson was one of several other inmates involved in the assault, but continued to deny that he had known Robinson well before the assault on Beale. (*Id.* 142-43, 145-46.)
-5-

been behind him on August 19, 2006, swinging the paddle at Beale, he would have struck Millner. (*Id.* 146, 150.) Robinson did not testify at trial.

Jurors found Robinson guilty on all charges. I sentenced Robinson on March 25, 2008, to a total of 262 months in prison. New counsel was appointed for Robinson's appeal, which was unsuccessful. *United States v. Robinson*, 337 F. App'x 368 (4th Cir. 2009) (unpublished), *cert. denied*, 130 S. Ct. 1928 (2010).

Robinson filed a timely § 2255 motion, raising several claims of trial error, prosecutorial misconduct, and ineffective assistance of counsel. The government filed a Motion to Dismiss to which Robinson responded.[2] After careful review of all submissions and the court record, I will grant the government's motion.

II

A. Procedural Default.

A collateral attack under § 2255 may not substitute for an appeal. Claims already decided on direct appeal may not be relitigated in a § 2255 motion. *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976). Claims that could have been but were not raised on direct appeal are procedurally barred from

---

[2] Trial counsel also filed an Affidavit in support of the Motion to Dismiss, stating that two exhibits to the § 2255 motion (purported to be letters from trial counsel to Robinson) had been fabricated. Because the dispute created by counsel's affidavit is not material to disposition of Robinson's claims, I make no finding as to the authenticity of these exhibits.

-6-

review under § 2255, unless the defendant demonstrates cause for his default and actual prejudice or demonstrates actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622 (1998) (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982)).

In Claim 3 of his § 2255 motion, Robinson argues that the evidence was not sufficient to support his conviction for assault with intent to commit murder as charged in Count One. In his direct appeal, Robinson challenged the sufficiency of the evidence on Count One, and the court of appeals denied relief, finding that Robinson "failed to demonstrate any error in the jury's determination of his guilt on this count." *Robinson*, 337 F. App'x at 369. Because the Fourth Circuit decided this issue, Robinson is barred from recasting the issue as a § 2255 claim. *Boeckenhaupt*, 537 F.2d at 1183. Therefore, I will grant the Motion to Dismiss as to Claim 3.

Robinson also could have raised on direct appeal the issues he argues in Claims 1, 5, 7, 9, and 11, alleging trial error and prosecutorial misconduct. Therefore, these claims are procedurally defaulted in this § 2255 action. As cause for his procedural default, and as separate grounds for relief under § 2255, Robinson asserts that counsel provided ineffective assistance at trial and on appeal. Attorney error can serve as cause for default, but only if it amounts to a violation

of the defendant's constitutional right to effective assistance of counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

For the reasons stated below, Robinson fails to demonstrate that counsel's alleged errors rose to the level of a constitutional violation under the two-prong standard in *Strickland v. Washington*, which requires a showing that counsel's deficient performance resulted in prejudice. 466 U.S. 668, 687 (1984). Therefore, Robinson fails to demonstrate cause for his defaults. Because Robinson also makes no colorable claim that he is actually innocent of the crime for which he stands convicted,[3] his claims of trial court error and prosecutorial misconduct alleged in Claims 1, 3, 5, 7, 9, and 11 are procedurally barred from review under § 2255.[4] I address separately the allegations of ineffective assistance of counsel.

B. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS.

To prove that counsel's representation was so defective as to require reversal of the conviction or sentence, a defendant must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. *Strickland,* 466 U.S. at 688. The

---

[3] To show actual innocence sufficient to excuse procedural default of these claims challenging his conviction, Robinson must show that "it is more likely than not that no reasonable juror would have convicted him" of the underlying crime if jurors had received specific, reliable evidence not presented at trial. *Bousley*, 523 U.S. at 623 (internal quotation marks and citation omitted). Robinson makes no such showing here.

[4] I also find these defaulted claims to be with merit.

-8-

defendant must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. *Id.* at 689. In addition, the defendant must show prejudice by demonstrating a "reasonable probability" that but for counsel's errors, the outcome would have been different. *Id.* at 694-95. If it is clear that the defendant has not satisfied one prong of the *Strickland* test, the court need not inquire whether he has satisfied the other prong. *Id.* at 697. In a § 2255 motion, the defendant bears the burden of proving his claims by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

*Brady* Claims Regarding Video Footage.

Robinson submits an incident report and a letter from the USP Lee warden, both indicating that the use of force against Robinson on August 19, 2006, was not videotaped. (Movant's Br. Ex. A, 33-36.) Robinson argues that the government withheld these documents, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to present them at trial (Claim 1) and that counsel thus had some obligation to present the documents or related argument about the video footage as part of the defense case (Claim 2).

The government denies a criminal defendant due process of law when it fails to disclose before trial evidence favorable to the defendant that is material either to guilt or punishment. *Brady*, 373 U.S. at 87. An extension of this rule also requires

-9-

disclosure of evidence affecting the credibility of government witnesses. *See United States v. Bagley*, 473 U.S. 667, 676 (1985); *Giglio v. United States*, 405 U.S. 150, 154 (1972). Evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. When the evidence at issue was "available to the defendant from other sources," however, the defendant has no *Brady/Giglio* claim when the government fails to produce it. *United States v. Wilson*, 901 F.2d 378, 380 (4th Cir. 1990).

Robinson fails to establish that counsel had grounds to raise a *Brady* claim here. First, *Brady* does not require the government to present all evidence at trial that is favorable to the defense, but merely requires disclosure of such evidence to the defendant for his use in the defense case. Robinson does not allege that the government failed to fulfill its obligation under *Brady* to disclose the incident report to Robinson and his attorney in a timely manner before trial. The warden's letter about the report was dated after the trial, was addressed to Robinson, and was in his possession at the time of sentencing. Thus, Robinson has no nondisclosure claim concerning this document.

Second, the incident report and warden's letter do not qualify as *Brady* or *Giglio* evidence, because they are not material. At the most, the notation about video on the incident report and the warden's letter indicate that no officer used a

-10-

handheld camcorder to videotape the unplanned use of force against Robinson on August 19, 2006. This fact, however, has no bearing on the authenticity of the security camera footage shown to jurors and explained to them through the testimony of eye witnesses to Robinson's attack on Beale. Thus, Robinson cannot show any reasonable probability that presentation at trial of these documents or related arguments would have resulted in a different outcome as required to show materiality under *Brady*/*Giglio*.

For similar reasons, Robinson cannot show that counsel's failure to present any argument at trial about the incident report or the warden's letter was either deficient performance or prejudicial to the defense under *Strickland*. These documents do not establish Robinson's innocence, impeach the credibility of the prosecution witnesses, or undermine the authenticity of the security camera footage. Robinson's ineffective assistance argument in Claim 2 thus fails under both prongs of the *Strickland* analysis and cannot serve as cause for his procedural default of Claim 1, which is also without merit. I will grant the Motion to Dismiss as to Claims 1 and 2.

## Aiding and Abetting Charge.

Robinson asserts that the Indictment was defective because it failed to cite the language of the statute and distinguish whether the alleged acts violated 18 U.S.C.A. §§ 2(a) or 2(b) and involved willful intent, defects that counsel failed to

challenge (Claim 5). Robinson also alleges that counsel was ineffective in failing to challenge the Indictment for "holding [Robinson] as a principal in the aiding and abetting charge," because the Indictment "failed to present key elements of the offense" under § 2 (Claim 4); and in failing to challenge the Indictment for lack of jurisdiction, at trial or on appeal, based on its failure to cite the language of § 2 (Claim 6).

The Indictment must give the defendant notice of the essential elements of the offense, and a mere reference to the statute does not fulfill this requirement. *United States v. Hooker*, 841 F.2d 1225, 1227-28 (4th Cir. 1988) (en banc). The aiding and abetting statute, 18 U.S.C.A. § 2, does not define a separate crime, however. *See, e.g., United States v. Smith*, 838 F.2d 436, 441 (10th Cir. 1988). Under § 2(a), "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C.A. § 2(a). To aid and abet under this section, the defendant must "in some sort associate himself with the venture, . . . participate in it as in something that he wishes to bring about, [and] seek by his action to make it succeed. . . . Simply put, aiding and abetting means to assist the perpetrator of the crime." *United States v. Horton*, 921 F.2d 540, 543 (4th Cir. 1990) (internal quotation marks and citations omitted).

All counts of the Indictment in this case cited § 2 (aiding and abetting) and § 113(a)(1) (the substantive charge in each count). For example, Count One charged that Millner and Robinson "as principals and aiders and abettors, did assault another inmate at USP Lee with intent to commit murder." This language gave Robinson notice that he was charged as an active participant in the assault, as both a principal and an aider and abettor. Nothing in the Indictment or the trial evidence suggested that Robinson was charged under § 2(b) ("causes an actto be done"). Because the Indictment notified Robinson of the elements of the charges against him, counsel had no grounds to challenge its validity, and his failure to do so was not deficient representation or prejudicial under *Strickland*. Because Robinson thus fails to establish ineffective assistance in Claims 4 and 6, he fails to show cause to excuse his default of Claim 5, which is also without merit. I willgrant the government's motion as to these claims.

Eye Witness Mack Carr.

Robinson asserts that the government deprived him of the right to confront Mack Carr, who was working in the kitchen with Beale when the attack occurred (Claim 7). Robinson also asserts that counsel was ineffective in failing to bring a Confrontation Clause challenge when the government did not call Carr as a witness and in failing to investigate Carr as a potential defense witness after Robinson asked him to do so (Claim 8).

-13-

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U. S. Const. Amend. VI. Because Mack Carr did not testify against him at trial, Robinson's inability to cross-examine Carr did not violate his constitutional rights. Counsel cannot be deemed ineffective for failing to make a meritless claim.

Robinson also fails to establish ineffective assistance regarding Carr as a potential defense witness. Beale testified that after Millner and Robinson inflicted their initial blows, Carr ran out of the room. Robinson's exhibits include a written investigative statement by J. Johnson, the cook supervisor, stating that Carr came to him in another area of the kitchen and told him "their [sic] fighting in the OM [Officer's Mess]." (Movant's Br. Ex. D, 50.) Neither Johnson's statement nor the trial evidence suggests that Carr observed any more of the attack after reporting it to Johnson. Thus, counsel had little reason to believe that investigation of Carr as a potential witness would result in evidence favorable to the defense.

Robinson argues that since Carr did not identify him to Johnson as one of the inmates who was fighting, Carr would have testified that Robinson was not involved in assaulting Beale, in corroboration of Millner's testimony denying Robinson's involvement. Robinson also submits copies of letters purporting to show that he asked counsel to subpoena Carr to testify as an eye witness that Robinson was not involved in the attack on Beale, and counsel refused. Robinson
-14-

fails to present an affidavit from Carr regarding the content of his expected testimony, however, and does not state any factual basis for a reasonable belief that Carr would, in fact, have testified favorably to the defense, if at all. Thus, I cannot find that counsel's failure to investigate or subpoena Carr was deficient performance under *Strickland*.

I also find no prejudice under *Strickland*. Even if Carr had testified that Robinson was not one of the men who assaulted Beale, I find no reasonable probability that his testimony would have changed the outcome of the trial in the face of the surveillance camera footage, verified by multiple officers' eye witness testimony.[5] Because Robinson's ineffective assistance claim fails under *Strickland*, Robinson has not shown cause to excuse his default of trial error claims about Carr, which are also without merit, and I will grant the Motion to Dismiss as to Claims 7 and 8.

---

[5] In his § 2255 motion, Robinson requested leave to engage in discovery to obtain a deposition of "the missing witness" and trial counsel. Under Rule 6 of the Rules Governing Section 2255 Proceedings, parties may engage in discovery in § 2255 actions only by leave of court for good cause shown. Good cause for discovery in a habeas action requires specific allegations demonstrating a reason to believe that, with the discovery, defendant may be able to demonstrate that he is entitled to relief. *See, e.g., Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997).

Because I find that Robinson has not alleged facts stating any claim under *Strickland* on which he would be entitled to relief under § 2255, I do not find good cause to allow the requested discovery. For the same reason, I also find that the interests of justice do not require appointment of counsel to represent Robinson in this § 2255 action.

-15-

Video Footage and Chain of Custody.

Robinson asserts that the court erred in admitting the video footage, because the USP Lee "evidence roster" did not show the chain of custody of the video footage; the victim's statement and grand jury testimony were inconsistent with the video; no Daubert hearing was conducted; the video was not clear; Robinson never admitted he was on the video; the government withheld documentary evidence concerning the existence of video footage, making the expert witness's testimony about the video improper; and the video was more prejudicial than probative (Claim 9). All of these issues are procedurally barred from review under § 2255 unless Robinson can prove Claim 10, alleging that appellate counsel was ineffective in failing to present claims concerning chain of custody and authenticity issues.

In support of his chain of custody claims, Robinson relies on the warden's note about the August 19, 2006, incident not being videotaped. Robinson also submits another document, purported to be a note from the warden, verifying that the attached chain of custody documentation for the physical evidence obtained at the crime scene did not indicate preservation of a video tape. (Movant's Br. Ex. F, 54.) Neither of these documents prove Robinson's assertion that the video footage shown to the jury was fabricated after the fact. As discussed in addressing Robinson's *Brady* claim, the warden's note that the incident was not videotaped

has no bearing on the operation of the surveillance cameras on that day or on the authenticity of the footage retrieved from those cameras. Similarly, the chain of custody log for physical evidence and the warden's note about that log (assuming without finding this document to be authentic) have no bearing on the validity of the surveillance camera footage. Such footage was not collected from the crime scene by investigators along with the physical evidence listed on the chain of custody log Robinson submits.

The prosecution properly established the chain of custody for the surveillance footage shown to the jury at trial through the testimony of Brian Kilgore, a Special Investigator Support Technician. Kilgore explained how the security cameras digitally record activity in various food service areas, how the digital footage of the August 19, 2006, incident was preserved by transfer from the cameras to a permanent hard drive, how Kilgore downloaded that footage from the hard drive onto a disk, and how he reviewed it to ensure it was the same footage as stored on the hard drive. (Trial Tr. Vol II, 3-6, 8, Dec. 18, 2007.)

For the stated reasons, counsel's failure to raise chain of custody arguments concerning the video footage shown to the jury was neither deficient performance nor prejudicial under *Strickland*. Robinson thus fails to show cause to excuse his default of the issues raised in Claim 9, and I will grant the Motion to Dismiss as to Claims 9 and 10.

Jury Instruction on Intent Element.

In Claim 11, Robinson asserts that the jury instructions omitted the necessary element of intent under 18 U.S.C.A. § 133(a) and that counsel was ineffective in failing to object to this omission. I find no merit to either of these arguments.

The instructions covered the element of intent as to each charge. Instruction 12 directed the jurors that to find Robinson guilty on Count One, they must find that Robinson "intentionally struck Larry Beale" and that he "did so with the intent to commit murder." (Final Jury Instructions, 14.) This instruction also advised jurors that to determine a person's intent, they could consider acts he committed and other evidence and could "infer . . . that a person intends the natural and probable consequences of acts knowingly done." (*Id.*) Instructions for Counts Two, Three, and Four directed jurors that each of these offenses required a showing that the charged conduct was intentional. Thus, Robinson fails to demonstrate any defect in the instructions regarding the intent element of the § 113(a)(1) charges.[6]

---

[6] Although Robinson styles Claim 11 as a challenge to the jury instructions, his brief also discusses sufficiency of the evidence as to Counts One (assault with intent to commit murder) and Three (assault resulting in bodily injury). Any claim of insufficiency of the evidence as to these counts is barred from review under § 2255; either the issue was already decided on direct appeal (Count One), *Boeckenhaupt*, 537 F.2d at 1183, or Robinson failed to raise such a claim on direct appeal. *Bousley*, 523 U.S.

For the same reasons, he also fails to demonstrate that counsel's failure to raise an objection on this issue was either deficient performance or prejudicial under *Strickland*, and fails to excuse his default of the trial error claims regarding the instruction. I will grant the Motion to Dismiss as to Claim 11.

III

For the reasons stated, I will grant the Motion to Dismiss and deny Robinson's § 2255 motion. Robinson's trial error claims are procedurally barred from review under § 2255, and his claims of ineffective assistance of counsel are without merit and cannot serve as cause to circumvent his default.

A separate Final Order will be entered herewith.

ENTER: June 29, 2012

/s/ James P. Jones
United States District Judge

---

at 622. Moreover, the jury had ample trial evidence from which to determine beyond a reasonable doubt that Robinson was guilty of these two offenses.